UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EMILY STEGNER,

      Plaintiff,

v.                                                                        Case No. 8:25-cv-794-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

      Defendant.

_____

## OPINION AND ORDER[2]

### I.   Status

Emily Stegner ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of "mental health issues," a "left hand injury" and corresponding "pain," "memory loss," and "human immunodeficiency virus (HIV)." Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"),

---

[1]  Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]  The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

filed May 15, 2025, at 246, 258, 579. Plaintiff protectively filed an application for SSI on September 9, 2020, alleging a disability onset date of January 9, 2020. Tr. at 517-25.[3] Later, the alleged disability onset date was amended to January 9, 2020. Tr. at 593. The application was denied initially, Tr. at 245-55, 256, 277, 280-82, and upon reconsideration, Tr. at 257, 258-69, 289-90.[4]

On April 25, 2023, an Administrative Law Judge ("ALJ") held a hearing, during which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.[5] Tr. at 214-44. On March 20, 2024, the ALJ issued a Decision finding Plaintiff not disabled since the date the SSI application was filed. See Tr. at 11-24.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council, submitted a brief authored by her lawyer, and submitted additional medical records. See Tr. at 2, 5-6 (Appeals Council exhibit list and orders), 40, 515-16 (request for review and cover letter), 41-213 (medical evidence), 720-22 (brief). On February 20, 2025, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On April 1, 2025, Plaintiff commenced this action under 42

---

[3]    Although actually filed on October 21, 2020, see Tr. at 517, the protective filing date is listed in the administrative transcript as September 9, 2020, see Tr. at 246, 258.

[4]    Some of these documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[5]    The hearing was held via telephone. Tr. at 216, 219-21.

U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff on appeal argues: 1) the ALJ's Decision is not supported by substantial evidence because in determining Plaintiff's residual functional capacity ("RFC"), the ALJ failed to account for the absenteeism Plaintiff is likely to experience; and 2) the Appeals Council erred by declining to consider new and material evidence that carried a reasonable possibility of changing the ALJ's Decision. Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (Doc. No. 19; "Pl.'s Mem."[6]), filed August 13, 2025, at 3-7, 7-9 (some emphasis omitted). On September 11, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") addressing Plaintiff's argument. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[6]    In this district, social security disability appeals are decided on briefing, rather than motion practice. See Order (Doc. No. 13), entered May 23, 2025. So, Plaintiff's Motion for Summary Judgment is construed as Plaintiff's Memorandum.

[7]    "Disability" is defined in the Social Security Act as the "inability to engage in

(Continued…)

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 13-24. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since September 9, 2020, the application date." Tr. at 13 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: Human Immunodeficiency Virus (HIV), Obesity, Substance Abuse, Personality Disorder, Neurocognitive Disorder[,] and Schizoaffective Disorder." Tr. at 13 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one

---

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 14 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

> [Plaintiff can] perform medium work as defined in 20 CFR [§] 416.967(c) except [Plaintiff] can occasionally lift and or carry 50 pounds and can frequently lift an or carry 25 pounds. [Plaintiff] can sit for a period of 6 hours, stand for a period of 6 hours, and walk for a period of 6 hours and push and pull as much as she can lift and carry. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can frequently work at unprotected heights, moving mechanical parts and frequent exposure to vibration. [Plaintiff] is limited to performing simple, routine tasks as defined by the DOT with an SVP level of 1 or 2. [Plaintiff] could maintain attention, concentration, persistence, and pace for 2 hours increments throughout the 8-hour workday with normal work breaks. She could have occasional contact and interaction with supervisors, coworkers, or the general public. She cannot have fast paced or strict quota-based work.

Tr. at 15-16 (emphasis omitted).

At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 23 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("34 years old . . . on the date the application was filed"), education ("limited"), lack of work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 23 (emphasis and citation omitted), such as "Hand Packager,"

"Kitchen Helper," and "Warehouse Worker," Tr. at 24 (emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . since September 9, 2020, the date the application was filed." Tr. at 24 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation

- 6 -

omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

### A. RFC Finding and Absenteeism

Plaintiff argues the ALJ erred when assessing the RFC by "failing to account for [Plaintiff's] absenteeism due to her severe mental impairment." Pl.'s Mem. at 4. As evidence of her absenteeism, Plaintiff cites numerous emergency room visits and voluntary hospitalizations for mental (and physical) issues, as well as involuntary hospitalizations under Florida's Baker Act. Id. at 5-6. She also cites a consultative psychological evaluation by Daliana V. Ferrero, Psy.D. of Hope Counseling Centers, see id. at 6[8]; Tr. at 2643-46, in which Dr. Ferrero opined Plaintiff's "symptoms based on report and clinical observations appear to be severely impacting activities of daily living, vocational performance, and interpersonal interactions," Tr. at 2646. According to Plaintiff, given the VE's testimony that she could not be absent from work in excess of one and one-half

---

[8]     Plaintiff does not name Dr. Ferrero specifically, but she discusses a "psychological evaluation through Hope Counseling Centers" and cites Dr. Fererro's evaluation.

days per month, the ALJ "should have addressed the frequency [Plaintiff] would have been absent from work due to her mental illness." Pl.'s Mem. at 6-7.

Defendant's position in response is perplexing. Defendant first characterizes the various emergency room visits and hospitalizations as "medical appointments" and argues Plaintiff has not shown how these appointments "would meaningfully interfere with the ability to work." Def.'s Mem. at 7. Then, Defendant continues: "She tries to equate absences due to impairments or symptoms, which are generally beyond a person's control, with taking time off to attend medical appointments, which is generally within a person's control." Id. at 7-8. Defendant then goes on to argue that "Plaintiff makes no attempt to show that she could not schedule more than one appointment per day or that she could not schedule appointments outside of work hours or on her off days." Id. at 8, 8-9. As for the psychological evaluation by Dr. Ferrero, Defendant finally gets one thing correct, pointing out that the ALJ found this opinion unpersuasive. Id. at 10 (citing Tr. at 21, 2643-46).

To state the obvious, Defendant's argument about absenteeism—based entirely on an erroneous premise that Plaintiff is pointing to voluntary medical appointments as the basis for her absenteeism—is not particularly helpful in resolving this issue. The Court's independent review of the Decision shows that the ALJ's consideration of Plaintiff's many hospitalizations was directly tied to the findings regarding Plaintiff's subjective complaints. So, the law on

- 8 -

subjective complaints and RFC findings is set forth, followed by the Court's analysis of the ALJ's findings and whether absenteeism was sufficiently considered.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); see also Malak v. Comm'r of Soc. Sec., 131 F.4th 1280, 1287 (11th Cir. 2025). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other

- 9 -

> > factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Malak, 131 F.4th at 1287; Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245,

1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 16. The ALJ went on to discuss that Plaintiff's "most significant impairments have been her psychiatric impairments of substance abuse, personality disorder, neurocognitive disorder and schizoaffective disorder." Tr. at 17. According to the ALJ:

> the evidence documents signs of malingering as noted by medical professionals, there are multiple inconsistent statements made by [Plaintiff,] and the severity of [Plaintiff's] symptoms appear to be exaggerated in different settings and drug induced in other settings[;] however[,] examining [Plaintiff's] behavior in both sober settings as well as during intoxication settings, [Plaintiff's] symptoms do not rise to a level of disability.

Tr. at 17. The ALJ cited multiple findings of malingering in Plaintiff's medical records. See Tr. at 17 (citations omitted).

The ALJ then acknowledged that Plaintiff had been hospitalized multiple times in 2021 "voluntarily all with reports of suicidal or homicidal ideation." Tr.

at 18. The ALJ pointed to specific statements in Plaintiff's medical records indicating that Plaintiff's housing situation was instable while using drugs. Tr. at 18. The ALJ found "a correlation of bouts of homelessness and her drug use and her desire of not wanting to be without food and shelter." Tr. at 18.

The ALJ further contrasted the "largely normal" mental status examination during an April 2021 hospitalization with the severity of symptoms endorsed by Plaintiff during Dr. Guzzi's August 2021 evaluation. Tr. at 18-19[9]; compare Tr. at 1004 (April 2021), with Tr. at 1097-1100 (August 2021). The ALJ then discussed the rest of the evidence, again finding evidence of malingering in a "blitz of hospitalizations, nine in total from October of 2021 right before her incarceration in December of 2021." Tr. at 19. As for Dr. Guzzi's opinion that Plaintiff's mental symptoms were more severe than the assigned RFC, the ALJ found the opinion "not persuasive" because it was internally inconsistent and inconsistent with the rest of the medical evidence. Tr. at 21.

Plaintiff does not specifically challenge any of these findings. They demonstrate that the ALJ did take into account Plaintiff's many hospitalizations when determining the RFC, but found generally that Plaintiff malingers, and specifically that Plaintiff had an incentive to appear for the

_____

[9]   The ALJ referred to a general "consultative psychological examination in August of 2021," Tr. at 18, which is when Dr. Guzzi's evaluation occurred, and cited "C11F/4," which contains Dr. Guzzi's evaluation.

voluntary hospitalizations because she needed shelter and food. These findings have support in the administrative transcript and need not be disturbed. Moreover, the ALJ found Dr. Guzzi's opinion unpersuasive. Given that the Court cannot reweigh the evidence or substitute its own judgment for the ALJ's, the Court finds the ALJ adequately considered whether Plaintiff's hospitalizations would render her overly absent from work. But, with evidence of malingering and sometimes ulterior motives for such hospitalizations, the Court cannot say the ALJ erred in this respect.

**B. Appeals Council Refusal to Consider Evidence**

Plaintiff argues the Appeals Council erred in refusing to consider evidence from Gracepoint Mental Health Center that Plaintiff submitted after the ALJ's Decision was rendered. Pl.'s Mem. at 7-9. The records span from January 2023 through October 2024.[10] See Tr. at 41-213. Responding, Defendant argues that Plaintiff has failed to demonstrate the evidence submitted to the Appeals Council rendered the ALJ's Decision erroneous. Def.'s Mem. at 10-14.

With few exceptions, a claimant may present new evidence at each stage of the administrative process, including to the Appeals Council. See 20 C.F.R.

---

[10]     Plaintiff's counsel's cover letter to the Appeals Council indicates they are dated April 21, 2024 through October 15, 2024, Tr. at 41, and Plaintiff's memorandum summarizes evidence dated December 2023 through April 2024, see Pl.'s Mem. at 8-9. The records actually begin in January 2023, fourteen months prior to the ALJ's Decision. See Tr. at 46.

§§ 404.900(b), 416.1400(b). When the Appeals Council is presented with evidence that was not before the ALJ, the Appeals Council must consider the evidence if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). In addition, a claimant must show good cause for submitting new evidence to the Appeals Council. See 20 C.F.R. §§ 404.970(b), 416.1470(b).

Although the Appeals Council is "not required to give a . . . detailed explanation or to address each piece of new evidence individually," Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1309 (11th Cir. 2018) (citing Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 784 (11th Cir. 2014)), if the Appeals Council "erroneously refuses to consider evidence, it commits legal error and remand is appropriate," Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1320 (11th Cir. 2015). "When a claimant properly submits new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Banks for Hunter v. Comm'r, Soc. Sec. Admin., 686 F. App'x 706, 709 (11th Cir. 2017) (citing Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007)).

Here, the Appeals Council recognized that Plaintiff submitted additional medical evidence, incorrectly noting it was dated from "April 21, 2024 through October 15, 2024." Tr. at 2. The Appeals Council found that since the ALJ

- 14 -

decided the case "through March 20, 2024," the evidence "does not relate to the period at issue" and "does not affect the decision about whether [Plaintiff was] disabled beginning on or before March 20, 2024." Tr. at 2.

Even though the Appeals Council erroneously found the evidence all post-dated the ALJ's Decision when it in fact did not, the Court cannot find reversible error because the evidence does not carry a reasonable possibility of changing the administrative decision. The evidence generally documents both voluntary and involuntary hospitalizations, often accompanied by drug use, see Tr. at 41-213, and would not have any material effect on the ALJ's findings regarding Plaintiff's many hospitalizations. For example, in one note, Plaintiff's chief complaint was listed as, "I usually just come here for a few days then discharge." Tr. at 154. In another, Plaintiff called law enforcement to take her to "Gracepoint to be psychologically evaluated" and made evolving statements about why. Tr. at 182. Nor has Plaintiff demonstrated good cause for failing to submit the evidence pre-dating the ALJ's Decision in a timely manner. Finally, as to evidence post-dating the ALJ's Decision, it does not relate back to the period under consideration by the ALJ and therefore is not chronologically relevant.

## V.    Conclusion

The ALJ's Decision is supported by substantial evidence, and the Appeals Council did not commit reversible error. In light of the foregoing, it is

- 15 -

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 30, 2026.

James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record